# EXHIBIT 3

1

*Hand-written Changes by Guy R. Humphrey*

*11/21/19*

1                 UNITED STATES BANKRUTPCY COURT

2              FOR THE SOUTHERN DISTRICT OF OHIO

3                 WESTERN DIVISION AT DAYTON

4

5

6      In re:  Tagnetics, Inc.     :     Case No. 19-30822

7                                   :     Judge Humphrey

8                                   :     Chapter 7

9

10                        APPEARANCES
11
12     Stephen B. Stern, Esq. and Robert Kracht, Esq. on
13     behalf of the Debtor, Tagnetics, Inc.:
14

15

16

17

18            BE IT REMEMBERED the above-entitled

19     hearing came on to be heard on the 25th day of

20     October, 2019 before the Honorable Guy R. Humphrey,

21     Judge via telephone.

22

23

24

25            TRI-COUNTY COURT REPORTING

26                 (513) 732-1477

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 3 of 24 PAGEID #: 375
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document     Page 2 of 23

2

```
 1              COURTROOM DEPUTY:  Gentlemen, the Judge
 2      is now on the line, case number 19-30822,
 3      Tagnetics, Inc.  May I have appearances please for
 4      the record?
 5              MR. KRACHT:  Robert Kracht for Tagnetics.
 6              MR. STERN: Stephen Stern for Tagnetics.
 7              THE COURT:  Is Mr. Kayser there?
 8              MR. KAYSER:  Mr. Kayser, pro se.
 9              THE COURT:  Okay, is Mr. Hager there?
10              MR. HAGER:  John Hager, pro se.
11              THE COURT:  And I think I heard Mr.
12      Earley.
13              MR. EARELY:  Yes.  Ron Earley, pro se.
14              THE COURT:  Great.  Thank you, everybody.
15      We appreciate you all being available for this
16      telephonic rendering of the Court's oral decision
17      following the evidentiary hearing we had last
18      Friday at the...at the court.  As I think I advised
19      you at the conclusion of the hearing last week, we
20      frequently render oral decisions and I frequently
21      do so be telephone like this to help keep matters
22      moving along.  But I assure you we put as much work
23      and analysis into the oral decisions as we do to
24      the written decisions.  We just save a little bit
25      of time in not having to cross all the T's and dot
```

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 4 of 24 PAGEID #: 376
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document     Page 3 of 23

3

```
 1     all the I's as ^we would in a written issued decision.
 2     So with that being said the Court is prepared to
 3     render it's oral decision on the contested matter
 4     involving Tagnetics' Motion to Enforce Settlement
 5     Agreement and the Petitioner and Creditors'
 6     Response to that Motion for which we had the
 7     hearing last Friday.
 8             This is the decision of the Court and the
 9     following constitute the Court's findings of fact
10     and conclusions of law in accordance with
11     Bankruptcy Rule 7052. This proceeding arises in a
12     case referred to this Court by the standing order
13     of reference entered in this district and is
14     determined to be a core proceeding pursuant to 28
15     U.S.C. § 157(b)(2)(A) and (O).  The Court is
16     authorized to enter final judgment with respect to
17     this contested matter.  In reaching its
18     determinations the Court considered the demeanor
19     and credibility of the witnesses who testified,
20     being the petitioning creditors, Ken Kayser, Ronald
21     Earley and Jon Hager and Stephen Stern, counsel for
22     Tagnetics.  The Court found all the witnesses to be
23     credible.  The Court also examined and considered
24     all exhibits admitted ~~in~~ and court filings and the
25     written memoranda and arguments of counsel.  The
```

Tri-County Court Reporting

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 5 of 24 PAGEID #: 377
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document      Page 4 of 23

4

1   exhibits being admitted were Petitioning Creditors'

2   Exhibits 3, 4 and 5.  And Tagnetics' Exhibits A

3   through D and F through I.  The Court did not admit

4   Petitioning Creditors' Exhibits 1 and 2 and

5   Tagnetics' Exhibit E.

6            In the event of an appeal following the

7   Court's review of the transcript of this oral

8   decision, a complete transcript of the Court's oral

9   decision will be entered as a separate filing on

10  the docket of this case.  In that event, without

11  changing its final judgment the Court reserves the

12  right to add, alter or delete any language, grammar

13  or punctuation in this oral decision so that it

14  correctly reflects the Court's intention in

15  determining this matter.

16           The Court will now list a series of

17  citations to legal authorities, some of which will

18  be cited in abbreviated form during the remainder

19  of this oral decision.  *Cogent Solutions Group,*

20  *LLC. v. The Hyalogic, LLC* at 712 F. 3d 305.

21  *Williams v. Ormsby* at 966 NE 2d 255.  *Bamerilease*

22  *Capital Corp. v. Nearburg* at 958 F. 2d 150.

23  *Nilavar v. Osborn* at 711 NE 2d 726.  *Re/Max Intern,*

24  *Inc. v. Realty One, Inc.* at 271 F. 3d 633.

25  *Brockwell v. Beachwood City School District,* case

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 6 of 24 PAGEID #: 378
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document     Page 5 of 23

5

1    number 104-CV-1155 at 2008 WL 918266.  *Sabatine BK*

2    *Development, LLC v. Fitzpatrick Enterprises, Inc.*

3    at 85 NE 3d 1127.  *In re:  ~~Ella Shack~~* *Halishuk* at 324 B.R.

4    641.  *216 Jamaica Avenue, LLC v. S&R Playhouse*

5    *Realty Company v S & R Playhouse Realty Company* at

6    540 F. 3d 433.  *Nee v. State Industries, Inc.* at 3

7    NE 3d 1290.  *Ohio State Bar Association v. Martin*

8    at 886 N.E. 2d 827.  *Rohrer Corp. v. Dane-Elec Corp*

9    *USA* at 482 F. Appx. 113.  And *Wilson v. Prime*

10   *Source Healthcare of Ohio* at 2018 WL 1127653.

11          The Court will now describe the

12   procedural and factual background related to this

13   contested matter.  This matter is before the Court

14   on Tagnetics' Motion to Enforce a Settlement

15   Agreement and the Response from Remaining

16   Petitioning Creditors.  See documents 101 and 106

17   under the docket of this case.  This case came to

18   the Court based on an involuntary petition filed by

19   the Remaining Petitioning...Petitioning Creditors,

20   see document one, and certain other Petitioning

21   Creditors who previously settled with Tagnetics.

22   The remaining pro se Petitioning Creditors,

23   specifically, Kenneth Kayser, Ronald Earley and

24   Jonathan Hager and Tagnetics indicated to the Court

25   on July 26th, 2019 that they reached a settlement.

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 7 of 24 PAGEID #: 379
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document      Page 6 of 23

6

```
 1    However, the parties subsequently disagreed as to
 2    whether the matter had truly been settled and if so
 3    what the terms of the settlement were.   In its
 4    Motion to Enforce the Settlement Agreement,
 5    Tagnetics argues that the parties reached a settlement
 6    agreement with the essential terms by email on July
 7    26th, 2019 and these terms were accepted by the
 8    Petitioning Creditors.  And now the Petitioning
 9    Creditors seek to include additional terms that
10    were not part of the agreement.  The Petitioning
11    Creditors argue that because the terms they wanted
12    included were mentioned in their first Settlement
13    Proposal on July 20th, 2019 which they titled as
14    their Final Offer to Tagnetics and Tagnetics did
15    not dispute these terms, the terms were accepted
16    and the remaining negotiations were to try to reach
17    agreement on an acceptable payment schedule.  The
18    Petitioning Creditors argue that because these
19    terms had already been accepted it was not
20    necessary that they be stated in the July 26th list
21    of key terms.  Based on this divide between the
22    parties, Tagnetics filed its Motion to Enforce the
23    Settlement the parties agreed to by email on July
24    26th.  The parties presented evidence on their
25    respective positions at an evidentiary hearing on
```

Tri-County Court Reporting

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 8 of 24 PAGEID #: 380
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document     Page 7 of 23

7

1   October 18th, 2019 and the Court is now prepared to

2   render its decision on the contested matter.

3         The Court will now state the statement of

4   the law and application of the facts to the law

5   related to this contested matter.  A Settlement

6   Agreement is a contract and as a contract the

7   validity and enforcement of it is governed by state

8   law. See *Cogent Solutions* at 309.  The state law

9   that applies to a contract formation issue is

10  determined by looking at where the agreement was

11  created.  See *Bamerilease* at 152.  Tagnetics is an

12  Ohio corporation and one of the Remaining

13  Petitioning Creditors who negotiated the agreement

14  resides in Ohio.  This case is pending in the

15  Southern District of Ohio.  Tagnetics' motion cites

16  and applies to Ohio law. Accordingly, the Court

17  will apply Ohio law in determining the

18  enforceability of the asserted settlement

19  agreement.  Under Ohio law a valid contract

20  includes offer, acceptance, contractual capacity,

21  consideration and a manifestation of mutual assent.

22  See *Williams* at 258.  When determining the validity

23  of a settlement agreement, the Court must determine

24  if the parties have assented to all material terms

25  of an agreement.  See *Re/Max Intern National* at

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 9 of 24 PAGEID #: 381
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document      Page 8 of 23

8

```
1   646.  If the parties have had a meeting of the
2   minds on the material terms of the agreement, then
3   the Court may enforce the Settlement Agreement.
4   See Brockwell at page 6.  Additionally, a Court
5   must focus only on the objective actions of the
6   party, rather than the parties' subjective belief
7   because under contract law, Courts properly consider only
8   objective manifestations of intent.  See Nibbler at
9   733.  Further, secretly held unexpressed intent is
10  not relevant to whether a contract is formed.  A
11  response to an offer that contains a change of
12  terms, a new term or some type of additional
13  conditional language is not an acceptance of that
14  offer but is instead a counter offer.  See Sabatine at
15  1133.  See also Halishak at 7...644.  Ohio
16  contract law states that a counteroffer operates to
17  reject and extinguish all previous offers, thereby
18  preventing the formation of any contract.  See
19  Halishak at 644.  The Petitioning Creditors argued
20  that the only portion of the July 20th email
21  settlement proposal that was being negotiated in
22  additional emails was the schedule of payments
23  and that the other terms set out in their initial
24  proposal were assumed to remain.  See document 106.
25  Tagnetics argues that the only terms to be included
```

Tri-County Court Reporting

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 10 of 24 PAGEID #: 382
Case 3:19-bk-30822    Doc 141    Filed 11/20/19    Entered 11/20/19 11:26:12    Desc Main
Document       Page 9 of 23

9

1    in the Settlement Agreement were those agreed to as

2    key terms in the July 26th email exchange.   See

3    document 101. The July 20th, email from Ken Kayser

4    on behalf of the Petitioning Creditors contained

5    the following terms which were not referenced in

6    the July 26th key terms:   "A mutual release of all

7    issues arising from our employment by Tagnetics, our

8    role as Directors of Tagnetics and our

9    participation in the Petition for Involuntary

10   Bankruptcy,  an acknowledgment of Kayser's and

11   Earley's stock ownership, confirmation of owner ship of

12   shares and unrestricted of shareholder rights,

13   agreement that all provision of our contracts,

14   including non-compete have expired or are

15   cancelled, acknowledgement of an outstanding loan

16   from Ron Earley to Tagnetics, principal plus

17   interest to be paid upon sale, which was to be

18   defined, divine of Tagnetics.   Principal is $30,000 and

19   current balance is approximately $60,000.

20   Acknowledgment of KVL Core Technology license,

21   $250,000 to be paid upon transfer or sale or

22   license of Tagnetics shelf tag technology or sale of

23   the company, acknowledgment of $315,000 of

24   deferred salary to be paid to Kayser upon the sale

25   of Tagnetics or other liquidity event."   That's the end

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 11 of 24 PAGEID #: 383
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document     Page 10 of 23

10

1    of the terms of the Petitioning Creditors I believe

2    were ~~notr.~~ were included as part of the settlement

3    of the matter which Tagnetics disputes.

4            In response to the Petitioning Creditors'

5    July 20th offer of settlement, Stephen Stern,

6    acting as counsel for Tagnetics, rejected this

7    proposal and suggested a ~~proposal~~ Structure for a different

8    proposal.  His July 23rd email sent at 10:46 a.m.

9    stated, "While I and the Tagnetics' team appreciate

10   the overture to try to reach a negotiated

11   resolution, the demand you put forward is not

12   realistic."  Earley then responded with another

13   offer through an email sent at 1:34 p.m. on July

14   23rd stating, "Here is our offer after your email

15   this morning.  Let me know if there is any

16   interest."  Stern responded with a counteroffer

17   which Earley rejected soon after stating, "No

18   chance."   See Earley email sent July 24th.

19   Following this rejection Stern implored the

20   Petitioning Creditors to respond with a

21   counteroffer through an email he sent on July 25th

22   at 12:42 p.m.  On the same day Earley responded

23   with a counterproposal.  See Earley July 25th email

24   sent at 1:25 p.m.  Stern responded to that email

25   through an email sent at 8:24 a.m. on July 26th

Case: 3:19-cv-00363-TMR  Doc #: 7-3  Filed: 01/30/20  Page: 12 of 24  PAGEID #: 384
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document     Page 11 of 23

11

1    stating that a high initial payment to each of the

2    creditors would not be possible.  Following this

3    email exchange there was a phone call between the

4    parties during which an apparent agreement was

5    reached.  Stern followed up this phone call with an

6    email detailing the key terms which were reached

7    during the telephone conference. And he asked for

8    each of the creditors to reply confirming this

9    agreement. See Stern July 26th email sent at 3:27

10   p.m.  Hager replied and confirmed agreement with

11   the terms set forth in the email stating, "I am

12   responding for Kayser, Earley and Hager" saying "we

13   agree to the terms set forth as documented above.

14   See Hager July 26th email sent at 3:56 p.m.  Hager

15   then sent an additional email restating the terms

16   laid out in Stern's email and again confirming

17   agreement upon those terms.  See July, see Hager

18   July 26th email sent at 3:58 p.m.  Less than an

19   hour after this email Hager sent another email

20   confirming a payment schedule stating, "We are

21   confirming the following payment schedule and

22   amount as part of this agreement."  See Hager July

23   26th email sent at 4:35 p.m.  The key terms stated

24   in the July 26th emails were as follows:  payment

25   of $90,000 total, $30,000 to each Petitioning

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 13 of 24 PAGEID #: 385
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document      Page 12 of 23

12

1    Creditor within three days of a fully executed
2    agreement.  The remaining schedule of payments as
3    you propose below, except in twelve and eighteen
4    months, instead of six months and twelve months.
5    Full mutual releases, no carveouts.
6    Dismissal/withdraw$^{al}$ of claims by each of you to be
7    filed within one day of receiving payment.  See
8    July 26th emails between the parties.  The
9    Petitioning Creditors' argument hinges on the
10   contention that the only term being negotiated
11   through the described emails were the details of
12   the payment schedule. However, the first email
13   proposal on July 20th was rejected by Stern on July
14   23rd.  Therefore, the email exchanges which
15   followed were all counteroffers or proposals and
16   the only terms included in these counteroffers were
17   those listed in these specific emails. After the
18   July 23rd rejection a clean slate began with regard
19   to terms.  The terms that the creditors argue were
20   assumed to be included in the July 20th proposal
21   were never mentioned again during the later email
22   conversations.  The parties set out their key terms
23   in writing with the July 26th emails.  The terms *the*
24   creditors now wish to argue are included were
25   noticeably absent from the key terms list. Also,

Tri-County Court Reporting

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 14 of 24 PAGEID #: 386
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document     Page 13 of 23

13

1  the inclusion of the specific payments to the

2  Petitioning Creditors with a full mutual release

3  with no carveouts provision necessarily excludes

4  any other form of monetary recovery by the

5  Petitioning Creditors from Tagnetics, such as any

6  personal loans made by the Petitioning Creditors to

7  Tagnetics or any deferred salary or royalty or

8  license fees owed by Tagnetics to any of the

9  Petitioning Creditors.  Any such obligations were

10  eliminated as a result of the Petitioning

11  Creditors' agreement for the full mutual release.

12  This detailed description of the emails from July

13  20th through July 26th is important to show the

14  numerous rejections and then finally an acceptance

15  and memorialization in writing of agreed key terms.

16  The Court has a duty to analyze such contract

17  formation issues from an objective standpoint.  The

18  Court will not look at the subjective intent or

19  beliefs of a party but rather on the facts set

20  forth.  See *Nibler* at 733.  Ohio law does not

21  require contracting parties to share a subjective

22  meeting of the minds to establish a valid contract.

23  Otherwise, no matter how clearly the parties wrote

24  their contract, one party could escape its

25  requirements simply by contending it did not

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 15 of 24 PAGEID #: 387
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document     Page 14 of 23

14

1    understand them at the time.  See *216 Jamaica*
2    *Avenue* at page 440.  Following an objective
3    approach, if a Court determines that the parties
4    have had a meeting of the minds on the material
5    terms of a settlement agreement, then it may
6    enforce such an agreement.  See *Re/Max*
7    *International* at 646 and *Brockwell* at page 6.  Here
8    looking at the objective intent of the parties
9    through email exchanges, the parties came to an
10   agreement as to the material terms on July 26th
11   through a phone call and then memorialized these
12   terms through email. Confusion as to the meaning of
13   certain terms does not itself invalidate a
14   contract.  A meeting of the minds occurs when there
15   is agreement on the essential terms.  In a contract
16   that is not for goods, the essential terms are
17   generally the parties to the contract and its
18   subject matter.  See *Nibler* at page 734.  The
19   Court is sensitive to the fact that the Petitioning
20   Creditors are pro se and that based on the
21   evidentiary hearing, these parties subjectively
22   believe that the additional terms from the July
23   20th email were still in play during the entirety
24   of the negotiations.  The Court found the
25   Petitioning Creditors credible on the point.

Tri-County Court Reporting

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 16 of 24 PAGEID #: 388
Case 3:19-bk-30822 Doc 141 Filed 11/20/19 Entered 11/20/19 11:26:12 Desc Main
Document Page 15 of 23

15

1    However, the standard for determining whether these

2    parties reached a meeting of the minds is *an*

3    objecti~~onable~~ *ve one*. And based on an objective view of

4    the emails between the parties, the terms of the

5    agreement were reached on July 26th, 2019.

6            The Court will now discuss the issue of

7    Mr. Earley's authority to negotiate. The

8    Petitioning Creditors also contend that Earley only

9    had authority to negotiate the payment schedule

10   with the understanding that the remainder of the

11   terms of the July 20th proposal was ~~invalid~~ *inviolate*. See

12   document 106. Therefore, under this logic any

13   negotiations with regard to terms other than the

14   payment schedule cannot be valid. Apparent

15   authority comes into play when, one, the principal

16   held the agent out to the public as possessing

17   sufficient authority to act on his behalf. Two, a

18   person dealing with the agent knew these facts.

19   And, three, the person acting in good faith had

20   reason to believe that the agent possessed the

21   necessary authority. See *Nee,* N-e-e at page 1308,

22   quoting Ohio State Bar Association at page 834.

23   Here, when Earley responded to emails from Stern he

24   was acting as an agent for the other pro se

25   parties. Indeed, Kayser made it clear he left the

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 17 of 24 PAGEID #: 389
Case 3:19-bk-30822    Doc 141    Filed 11/20/19    Entered 11/20/19 11:26:12    Desc Main
Document      Page 16 of 23

16

1    details of these negotiations to Earley. Any limits

2    on Earley's power to negotiate were never

3    communicated to Tagnetics and the petitioning

4    creditors never presented any evidence to suggest

5    Earley lacked authority.  Indeed, all Tagnetics was

6    aware of was each of the parties were copied in

7    these emails.  Further, each of the Petitioning

8    Creditors were copied on each of the emails from

9    Earley and Hager to Stern.  And if they disagreed

10    with the way the negotiations were taking place,

11    each could have each made such an objection clear.

12    Therefore, the asserted limited authority of Earley

13    to negotiate would not invalidate any terms agreed

14    to July 26th.

15         The Court will now discuss the term "full

16    mutual release with no carveouts." In the agreement

17    the parties agreed to full mutual releases, no

18    carveouts. What exactly this means to each party

19    has been in dispute and was a central point of

20    contention during the evidentiary hearing. The

21    Court determines that a full release with no

22    carveouts by its ordinary meaning would include all

23    liability between the parties, including salary,

24    benefits and loans.  This Court's interpretation of

25    "full" in "full mutual releases" is that it covers all

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 18 of 24  PAGEID #: 390
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document    Page 17 of 23

17

1    obligations of the parties, whether it be salary,

2    expenses, license fees or any other monetary

3    obligation of any nature which the parties *are* owed or

4    claims to be owed. To this extent, the term no

5    carveouts is duplicative of the term full. The term

6    mutual means that each party releases the other

7    party, that Kayser releases Tagnetics of all

8    obligations it owes him and Tagnetics releases

9    Kayser of all obligations which Kayser owes to

10   Tagnetics, etc. *However* Although it would not resolve any

11   issue of the Remaining Petitioning Creditors'

12   equity interest if any.  Nor would it release third

13   parties not described in the July 26th emails,

14   including, but not limited to Compass Marketing.

15   At the evidentiary hearing Stern stated that

16   releasing affiliates of a company was common in

17   these types of agreements.  While that may be true,

18   if Compass was to be specifically included in the

19   release it should have been made clear in the key

20   terms that the release included other parties.

21   This Court does not construe...construe full mutual

22   releases, no carveouts, to include affiliates,

23   parent corporations, officers, directors or other

24   undisclosed third parties.  Moreover, the main

25   exhibit concerning the affiliate status of Compass

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 19 of 24 PAGEID #: 391
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document     Page 18 of 23

18

1    was not admitted due to it being hearsay and no

2    evidence was admitted as to the status of Compass

3    and its relationship to Tagnetics.  The inclusion

4    of the release in the prior agreements with the

5    early settling Petitioning Creditors is not

6    sufficient, even if an entity in which Kayser held

7    an interest was a party to that prior settlement.

8    It is not require that any settlement resolve all

9    issues between parties or related parties or

10   individuals, only that there was a contractually

11   enforceable settlement of key terms.

12           The Court now will describe a summary of

13   the settlement analysis.  Although the settlement

14   may not have resolved all disputes between

15   Tagnetics and the Remaining Petitioning Creditors,

16   by an objective standard a meeting of the minds

17   occurred as to the payments to the Remaining

18   Petitioning Creditors and a mutual release of any

19   other obligations or damages.  The agreement did not

20   address Compass or any affiliates, parent

21   corporation, officers, directors or third parties.

22   Nor did it cover equity interests of the Remaining

23   Petitioning Creditors, if any.  The parties either

24   by reference to rejected offers which no longer

25   have any legal effect or by draft settlement

1    agreements proposed after the agreement date of

2    July 26th, have attempted to expand the agreement

3    beyond the plain meaning of its terms. Thus, the

4    agreement was as the parties agreed to by email on

5    July 26th, 2019. Payments of $30,000 to each

6    Petitioning Creditor within three days of a fully

7    executed agreement, As the parties did not enter a

8    formal settlement agreement but had agreed on

9    essential terms of payment, the $30,000 shall be

10    paid within three business days of the entry of the

11    order enforcing the settlement. Another $30,000

12    each shall be paid to each of the Remaining

13    Petitioning Creditors after twelve months and a

14    third payment after eighteen months. The balance

15    of the payments due to the Remaining Petitioning

16    Creditors shall be paid upon the next liquidity

17    event as follows: $96,980 to Ron Earley; $61,582

18    to Ken Kayser and $58,144 to Jon Hager. The parties

19    agree as to the definition of a liquidity event

20    and, therefore, liquidity event is to be defined as

21    meaning (a) when one person or entity directly or

22    indirectly becomes the beneficial owner of more

23    than 50% of the outstanding securities of

24    Tagnetics, provided that the one person or entity

25    does not directly or indirectly own more than 50%

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 21 of 24 PAGEID #: 393
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document     Page 20 of 23

20

1    of the outstanding securities of Tagnetics on the

2    date of the agreement becomes valid; (b) The

3    consummation of a merger, sale or consolidation of

4    Tagnetics with or to another company; (c) A sale

5    of substantially all of the assets of Tagnetics;

6    Or, (d) Completion of a plan to liquidate, dissolve

7    or wind up Tagnetics that was approved by

8    Tagnetics' shareholders or board of directors.  The

9    parties mutually released any obligations to each

10   other as to the salary, benefits, loans or other

11   similar obligations owed to the Remaining

12   Petitioning Creditors.  The agreement does not

13   address any equity interests of the Remaining

14   Petitioning Creditors. It also does not release any

15   third party obligations, including but not excluded

16   to Compass Marketing.  Absent specific reference to

17   such matters that had not occurred as of July 26th,

18   the release of a stranger to a settlement is not

19   ordinary, nor would ownership interest in a

20   corporate entity be finalized by a general release.

21   Finally, upon payment of the initial $30,000 to

22   each of the remaining petitioning creditors,

23   Tagnetics shall file a notice of payment with the

24   Court and serve by email such notice on each of the

25   Petitioning Creditors.  Upon this filing the Court

Tri-County Court Reporting

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 22 of 24 PAGEID #: 394
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document    Page 21 of 23

21

1    will wait 24 hours and then it shall dismiss the

2    complaint against or the involuntarily petition

3    against Tagnetics to commence an involuntary

4    proceeding.

5            The Court will now discuss the issue of

6    attorney fees.  Having determined that the

7    settlement motion is to be enforced, the remaining

8    issue is whether this Court should grant Tagnetics'

9    request for attorney fees.  Ohio law allows such

10   fees when a party prevails on a Motion to Enforce

11   Settlement, regardless of whether an exception to

12   the American rule applies and regardless of whether

13   bad faith exists.  The award is compensatory

14   damages for the cost of such additional litigation.

15   See *Rohrer* from the Sixth Circuit and the U.S.

16   District Court decision in *Wilson*, both

17   interpreting Ohio law.  Accordingly, Tagnetics

18   shall have fourteen days from the date the order on

19   this oral decision is entered to file an

20   Application for Attorney Fees as compensatory

21   damages.  Tagnetics must file and serve by

22   ~~each...by~~ email each of the Petitioning Creditors.

23   The Petitioning Creditors will have fourteen days

24   from the filing of such application to respond.~~, to~~

25   ~~respond~~.  Having determined that attorney fees are

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 23 of 24 PAGEID #: 395
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document     Page 22 of 23

22

 1    proper, the sole issue for the Court to determine

 2    is the reasonableness and appropriateness of the

 3    fees sought.  Upon any applications and responses

 4    the Court will take the matter of attorney fees

 5    under advisement.

 6              In conclusion, for these reasons the

 7    Court will enter an order which provides in

 8    accordance with the Court's oral decision the

 9    settlement agreement agreed to on July 26th, 2019

10    shall be enforced. The order shall, consistent with

11    this oral decision, provide the ~~peri~~meters of the   *para*

12    parties' settlement.

13              Thank you.

14

15              (Off the record)

16

17

18

19

20

21

22

23

24

25

Case: 3:19-cv-00363-TMR Doc #: 7-3 Filed: 01/30/20 Page: 24 of 24 PAGEID #: 396
Case 3:19-bk-30822   Doc 141   Filed 11/20/19   Entered 11/20/19 11:26:12   Desc Main
Document     Page 23 of 23

23

1                    C E R T I F I C A T E
2    STATE OF OHIO
3                         SS
4    COUNTY OF CLERMONT
5
6            I, Cindy Elaine Meguire, transcriptionist
7    and notary public, do hereby certify that the
8    foregoing was transcribed from an audio recording by
9    me, and that the same is true and correct in all
10   respects as transcribed from said audio recording.
11           I further certify that I am not counsel,
12   attorney, relative or employee of any of the parties
13   hereto, or in any way interested in the within
14   action.
15           IN WITNESS WHEREOF, I have hereunto set my
16   hand on this 19th day of November, 2019.
17
18                              s/s Cindy Elaine Meguire
19
20                       —————————————————————————————
21   My Commission Expires:        Cindy Elaine Meguire
22   May 3, 2024                    Notary Public-State of Ohio
23
24
25


                    Tri-County Court Reporting