UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TAGNETICS, INC., | : | |
| | : | |
| Appellant, | : | Case No. 3:19-cv-00363 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| KENNETH KAYSER, *et al.*, | : | |
| | : | |
| Appellees. | : | |

---

**ENTRY AND ORDER DENYING "APPELLANT'S MOTION TO STAY
BANKRUPTCY COURT'S OCTOBER 25, 2019 ORDER AND FOR APPROVAL
OF A SUPERSEDEAS BOND" (DOC. 7) AND ORDERING CLERK TO
SUPPLEMENT THE RECORD IN THIS CASE**

---

Pending before the Court is the "Motion to Stay Bankruptcy Court's October 25, 2019 Order and for Approval of a Supersedeas Bond" (Doc. 7) (the "Motion to Stay") filed by Appellant Tagnetics, Inc. ("Tagnetics"). Appellees Kenneth W. Kayser, Ronald E. Earley, and Jonathan Hager (collectively, "Appellees"), acting *pro se*, filed a Response. (Doc. 8.) Tagnetics then filed a Reply in support of the Motion to Stay. (Doc. 9.) The Motion to Stay is fully briefed and ripe for review. For the reasons discussed below, the Court **DENIES** the Motion to Stay.

**I.    BACKGROUND**

This case is an appeal from an order entered by the United States Bankruptcy Court for the Southern District of Ohio (the "Bankruptcy Court") on October 25, 2019 (the "October 25 BK Order"). (*See* Doc. 1.) Tagnetics filed a motion in the Bankruptcy Court to stay that order and for approval of a *supersedeas* bond. (*See* Doc. 2-23.) On November 15, 2019, the Bankruptcy

1

Court denied that motion.[1]

The underlying case in the Bankruptcy Court stems from the Appellees' filing of an involuntary bankruptcy proceeding against Tagnetics. (Doc. 2-2.) The Appellees allege that Tagnetics is not paying its debts as they become due, namely hundreds of thousands of dollars in wages or salary to each of the Appellees. (*Id.*)

In the October 25 BK Order that is being appealed, the Bankruptcy Court addressed a motion filed by Tagnetics to enforce an alleged settlement agreement with the Appellees. (*See* Doc. 2-21.) The Bankruptcy Court granted that motion, in part, and set forth how "the settlement agreement agreed to by the parties on July 26, 2019" shall be enforced. (*Id.*) The terms for enforcement per the October 25 BK Order include a "Payment Schedule" requiring four payments (first, second, third, and balance) be made to each of the Appellees. (*Id.*) The October 25 BK Order also states that "the parties are mutually released from any past obligation to each other arising out of any contract or claim of any nature," but that it "does not release any obligations owed to or from third parties, including, but not limited to, Compass Marketing, or any affiliates, subsidiaries, parent corporation, officers, or directors of Tagnetics, Inc." (*Id.*) Tagnetics asserts that the Bankruptcy Court held that the term "full mutual releases (no carve outs)" in the alleged settlement agreement did not include a release for Tagnetics' parents, subsidiaries, or other related individuals/entities. (Doc. 7 at PAGEID # 340; *see also* Doc. 7-3 (transcript of 10/25/19 Bankruptcy Court hearing) at PAGEID # 389-91.)

---

[1] Although the motion to stay that Tagnetics filed in the Bankruptcy Court is included in this Court's docket (*see* Doc. 2-23), a copy of the Bankruptcy Court's order denying that motion is not. For purposes of ruling on the Motion to Stay, this Court accessed that order directly from the Bankruptcy Court's docket. (*See* Bankr. S.D. Ohio Case No. 3:19-bk-30822, Doc. No. 138.) *See also Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n.5 (6th Cir. 2005) (federal courts may take judicial notice of related proceedings in other courts of record). So that the record in this case may be complete, the Clerk is ordered to file a copy of Bankr. S.D. Ohio Case No. 3:19-bk-30822, Document Number 138 in this case.

Tagnetics states that, following entry of the October 25 BK Order, it then initiated the pending appeal with this Court in order to "(1) obtain a ruling that its negotiated settlement included a release (by and for) related third parties, such as Tagnetics' parents, subsidiaries, affiliates, officers, directors, and other related [parties], or (2) in the alternative, if the release is found not to apply to related individuals/entities, then there was no 'meeting of the minds' with respect to the settlement and there is no settlement agreement to enforce."  (Doc. 7 at PAGEID # 340-41.)

II. **LEGAL STANDARDS**

The Federal Rules of Bankruptcy Procedure govern the filing of a stay pending appeal of a bankruptcy court's order.  Bankruptcy Rule 8007(a)(1)(A) provides that, "[o]rdinarily, a party must move first in the bankruptcy court for … a stay of a judgment, order, or decree of the bankruptcy court pending appeal."  If a party first moves in the bankruptcy court for a stay, and that motion is denied, then that party may file a motion in the district court for a stay.  FED. R. BANKR. P. 8007(b)(1).  If a motion was first made in the bankruptcy court, then the motion must "either state that the court has not yet ruled on the motion, or state that the court has ruled and set out any reasons given for the ruling."  FED. R. BANKR. P. 8007(b)(2)(B).[2]  "The motion must also include: (A) the reasons for granting the relief requested and the facts relied upon; (B) affidavits or other sworn statements supporting facts subject to dispute; and (C) relevant parts of the record."  FED. R. BANKR. P. 8007(b)(3).

A federal court, "as part of its traditional equipment for the administration of justice," can

---

[2] The Notes of the Advisory Committee for Bankruptcy Rule 8007 explain that "[t]he motion for relief in the district court … must state … why the bankruptcy court denied the relief sought."  FED. R. BANKR. P. 8007 advisory committee's note (2014).

stay the enforcement of a judgment pending the outcome of an appeal. *Nken v. Holder*, 556 U.S. 418, 421, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009). The Supreme Court in *Nken* explained that "[a] stay does not make time stand still, but does hold a ruling in abeyance to allow an appellate court the time necessary to review it." *Id.* "[A] stay operates upon the judicial proceeding itself … either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability." *Id.* at 428.

"The ability to grant interim relief is accordingly not simply an historic procedure for preserving rights during the pendency of an appeal, but also a means of ensuring that appellate courts can responsibly fulfill their role in the judicial process." *Id.* at 427 (internal quotation marks and citation omitted). "At the same time, a reviewing court may not resolve a conflict between considered review and effective relief by reflexively holding a final order in abeyance pending review." *Id.* "A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Id.* (internal quotation marks and citation omitted). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (internal quotation marks omitted). And, although the issuance of a stay is left to the court's discretion, the court's "judgment is to be guided by sound legal principles." *Id*. at 434 (internal quotation marks omitted).

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of" the court's discretion to grant a stay. *Id.* at 433-34. A stay pending an appeal is similar to, though not the same as, a preliminary injunction; likewise, the factors that govern a decision to issue a preliminary injunction are similar to the factors that govern the decision to issue

4

such a stay. *See id.* at 434. The four factors to be considered are the following:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4) where the public interest lies.

*Id.* at 434; *see also Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (setting forth similar factors in context of whether to grant a stay under Fed. R. App. P. 8(a) pending an appeal).[3]

"These factors are not prerequisites that must be met," but instead are balanced together. *Griepentrog*, 945 F.2d at 153. However, the first two factors are the most critical. *Nken*, 556 U.S. at 434. Those two factors are also interlinked: "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the movant] will suffer absent the stay." *Griepentrog*, 945 F.2d at 153. Finally, a court is not required to make specific findings concerning each of the factors if fewer factors are dispositive of the issue. *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003); *see also Baker v. Wayne Cnty. Treasurer (In re Baker)*, No. 17-12870, 2017 WL 6015380, 2017 U.S. Dist. LEXIS 199290 (E.D. Mich. Dec. 5, 2017) (denying motion to stay pending appeal from bankruptcy court ruling after only analyzing the first two factors because the movant had made only a weak showing on both of them).

---

[3] Specifically, *Griepentrog* identifies the four factors as: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Griepentrog*, 945 F.2d at 153.

## III. ANALYSIS

In the Motion to Stay, Tagnetics states that it is moving pursuant to Fed. R. App. P. 8(a) to stay the October 25 BK Order and for the approval of a *supersedeas* bond.[4] (Doc. 7 at PAGEID # 340.) It specifically requests that "this Court stay the Bankruptcy Court's October 25, 2019 Order with respect to the payment schedule set forth therein, pending the outcome of the instant appeal" and that "this Court approve a supersedeas bond in the amount of $180,000.00, which is the total value of the first two payments required pursuant to the Bankruptcy Court's Order." (*Id.* at PAGEID # 341.)

### (1) Tagnetics' Failure to Comply with Bankruptcy Rule 8007(b)

Although the Motion to Stay states that the Bankruptcy Court denied Tagnetics' motion to stay filed in the Bankruptcy Court (*See* Doc. 7 at PAGEID # 341, 350, 352), it fails to fulfill the additional requirement of Bankruptcy Rule 8007(b)(2)(B) that the Motion to Stay "set out any reasons given for the ruling." FED. R. BANKR. P. 8007(b)(2)(B).[5] Although not required, Tagnetics also did not file (or attach) a copy of the Bankruptcy Court's order denying Tagnetics' motion to stay filed in the Bankruptcy Court, but, as noted above, this Court located that order in the Bankruptcy Court's docket. In that order, the Bankruptcy Court found the following:

> Tagnetics did not argue in the Stay Motion how the *Griepentrog* factors support the issuance of a stay in this case. Having not even argued that it can meet the four-part test, the court finds that Tagnetics has not carried its burden to establish why the circumstances warrant the issuance of a stay. The court, therefore, finds that a stay is not warranted and the Stay Motion is **denied**. This order is, of course,

---

[4] The language in Fed. R. App. P. 8(a) is similar to the language in Bankruptcy Rule 8007(a) that concerns an initial motion to stay being filed in the court that entered the judgment or order being appealed. The language in Fed. R. App. P. 8(a)(2) is similar to the language in Bankruptcy Rule 8007(b) that concerns a motion to stay being filed in the court where the appeal is pending.

[5] The language in Fed. R. App. P. 8(a)(2)(A)(ii) is similar to the language in Bankruptcy Rule 8007(b)(2)(B): "The motion must … state that, a motion having been made [in the district court for a stay], the district court denied the motion or failed to afford the relief requested <u>and state any reasons given by the district court for its action</u>." FED. R. APP. P. 8(a)(2)(A)(ii) (emphasis added); *see also* FED. R. APP. P. 8(a)(2)(B).

without prejudice to any stay relief Tagnetics may seek from the District Court. *See* Fed. R. Bankr. P. 8007(b).

(Doc. 138 in Bankr. S.D. Ohio Case No. 3:19-ck-30822 (emphasis in original).) Thus, the Bankruptcy Court even directed Tagnetics to the rule—with its corresponding requirements—that applies here. Tagnetics' failure to comply with the relevant procedural rules is one reason that this Court denies the Motion to Stay.

### (2) The Motion to Stay Also Fails on Its Merits

Another reason that this Court denies the Motion to Stay is that it fails on its merits. Tagnetics has not met its burden of showing that a stay pending appeal is warranted.

The Court addresses the second factor first. As stated above, that factor—"whether the applicant [i.e., Tagnetics] will be irreparably injured absent a stay"—is one of the two critical factors in the analysis. In fact, the Supreme Court in *Nken* explained that "[t]he authority to grant stays has historically been justified by the perceived need to prevent irreparable injury to the parties or to the public pending review." *Nken*, 556 U.S. at 432. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Griepentrog*, 945 F.2d at 154 (quoting *Sampson v. Murray*, 415 U.S. 61, 90, 39 L.E. 2d 166, 94 S. Ct. 937 (1974)). Additionally, "simply showing some 'possibility of irreparable injury' fails to satisfy" this factor. *Nken*, 556 at 434-35 (internal citation omitted). Given that the Sixth Circuit in *Griepentrog* held that "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the movant] will suffer absent the stay" and "[s]imply stated, more of one excuses less of the other," a movant has a heavy burden if it fails to show any irreparable injury absent a stay. *Griepentrog*, 945 F.2d at 153.

7

Here, Tagnetics has essentially admitted that it will not suffer any irreparable injury absent a stay. It argues that the "potential harm" that it would endure if a stay is not granted is that "the sums paid to Appellees will have been made improperly" and that it "would very likely require further Court intervention for Tagnetics to recover from Appellees the funds it should not have paid in the first place" (assuming that Tagnetics is successful on its alternative argument on appeal, as explained below). (Doc. 7 at PAGEID # 350.) Yet Tagnetics admits that "such an outcome would not constitute irreparable harm as that term is understood and applied by this Court" and that "monetary injuries alone are not enough to show irreparable harm." (Doc. 7 at PAGEID # 350.) The Court agrees with Tagnetics' admission. *See, e.g., Griepentrog*, 945 F.2d at 154 ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm") (quoting *Sampson*, 415 U.S. at 90). Thus, one of the critical factors is absent here.

Balancing this finding (that there is no showing of irreparable injury to the applicant absent a stay) with the Court's analysis of the other three factors results in the Court finding that Tagnetics has not met its burden to be granted a stay. With respect to the first factor (likelihood of success), there is an interesting—and notable—situation presented in this case. If Tagnetics <u>is successful</u> with its primary argument in the appeal (<u>i.e.</u>, that this Court rule that the settlement agreement includes a release with respect to third parties), then <u>Tagnetics would pay</u> the Appellees in accordance with the schedule set forth in the settlement agreement. It is only if Tagnetics is not successful with its primary argument in the appeal but is successful with its alternative argument

8

in the appeal (i.e., that this Court rule that the release is found not to apply to third parties, there was no "meeting of the minds" on the settlement, and thus no settlement agreement to enforce) that Tagnetics would not pay Appellees according to the schedule set forth in the settlement agreement. Thus, the stronger its likelihood of success on its primary argument in the appeal, the stronger the likelihood that a stay is unnecessary because a stay would halt payments that it would be making—and (under that argument) concedes that it should be making—anyway.

In support of its argument on the likelihood of success factor, among other things, Tagnetics identifies some caselaw from other jurisdictions (specifically Florida and Vermont) that it asserts hold exactly as Tagnetics is asking this Court to hold on appeal with respect to the scope of the release. Overall, although Tagnetics has demonstrated that it has some likelihood of success on the merits of the appeal, the Court does not find it to be "a strong showing that [it] is likely to succeed"—and certainly not strong enough to counterbalance the finding that Tagnetics will not "be irreparably injured absent a stay" (particularly given the peculiar situation presented in this case concerning what would be the result of success on its primary argument in the appeal). *Nken*, 556 U.S. at 434.

The inquiry on the third factor is "whether issuance of the stay will substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 434. Tagnetics appears to mix up which parties are the focus of the second and third factors. Tagnetics incorrectly reads the second factor to involve whether Appellees (the non-applicant) will suffer irreparable injury if the stay is granted. (*See, e.g.,* Doc. 7 at PAGEID # 349; Doc. 9 at PAGEID # 449.) However, the inquiry on the second factor is "whether the applicant will be irreparably injured absent a stay," while the inquiry on the third factor is "whether issuance of the stay will substantially injure the other parties

interested in the proceeding." *Nken*, 556 U.S. at 434 (emphasis added). Thus, the focus regarding Appellees is whether they will be "substantially injure[d]" if the requested stay is issued. The *pro se* Appellees assert in their Response that the debts owed to them by Tagnetics "began accruing in 2016 and the lack of payment of these funds has had a deleterious effect on the pro se parties with impact on both their families and their business endeavors," including "impact on many of their financial decisions."[6] (Doc. 8 at PAGEID # 444.) The Court finds that this factor favors denying the stay requested.

Finally, with respect to "where the public interest lies," the Court finds that this is not a case where the parties have made a strong showing either way. *Nken*, 556 U.S. at 434. The factor certainly does not tip the overall balance in favor of granting (or denying) a stay in these particular circumstances.

## IV. CONCLUSION

Tagnetics, as the party requesting a stay, has not met its burden of showing that the circumstances presented justify a stay. For the reasons stated above, the Court **DENIES** "Appellant's Motion to Stay Bankruptcy Court's October 25, 2019 Order and for Approval of a Supersedeas Bond" (Doc. 7).

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, February 19, 2020.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[6] The Court notes that the amounts alleged by Appellees in the bankruptcy petition are not insignificant. Mr. Kayser claims $307,580 in unpaid wages, Mr. Earley claims $341,755 in unpaid salary, and Mr. Hager claims $387,187 in unpaid salary. (Doc. 2-2.)