IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

---

TAGNETICS, INC.

*Appellant/Alleged Debtor*

v.

KENNETH KAYSER, ET AL.

*Appellees/Alleged Judgment Creditors.*

---

Appeal from the United States Bankruptcy Court for the Southern District of Ohio
(The Honorable Guy R. Humphrey)

---

**REPLY BRIEF OF APPELLANT**

---

Respectfully submitted,

Stephen B. Stern, Admitted *Pro Hac Vice*
KAGAN STERN MARINELLO & BEARD, LLC
238 West Street
Annapolis, Maryland 21401
(410) 216-7900 – Telephone
(410) 705-0836 – Facsimile
stern@kaganstern.com (email)

*Counsel for Appellant/Alleged Debtor
Tagnetics, Inc.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ………………………………………………………………..ii

INTRODUCTION………... ……………………………………………………………….....1

REPLY ARGUMENT……...………………………………………………..……………..…1

      A.    THE REMAINING PETITIONING CREDITORS MISCHARACTERIZE THE MAIN ISSUE ON APPEAL, WHICH IS WHETHER THE TERM "FULL MUTUAL RELEASES (NO CARVE OUTS)" INCLUDES A RELEASE OF PARENT COMPANIES, SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, AND OTHER RELATED PARTIES…….…….…....1

      B.    THE REMAINING PETITIONING CREDITORS DO NOT OFFER ANY EVIDENCE OR VIABLE ARGUMENTS THAT THERE WAS A MEETING OF THE MINDS IN THE EVENT THE COURT DETERMINES THE PHRASE "FULL MUTUAL RELEASES (NO CARVE OUTS)" DOES NOT INCLUDE RELATED PARTIES…....…………………………………………….…………….6

      C.    APPELLEES MISCHARACTERIZE THE RECORD…………………….……7

      D.    APPELLEES CONSISTENTLY FAIL TO CITE AND/OR ACCURATELY REFLECT THE RECORD……………………………………………….....…9

CONCLUSION……………………………………………………………………………..10

CERTIFICATE OF COMPLIANCE WITH RULE 8015(a)(7)…....…………………………...11

CERTIFICATE OF SERVICE ……………………………………………………………...12


# TABLE OF AUTHORITIES

## CASES

### Federal Cases

*Baseball at Trotwood, LLC v. Dayton Prof'l Baseball Club,*
    2003 U.S. Dist. LEXIS 27460 (S.D. Ohio 2003) ................................................10

*Foster v. Barilow,*
    6 F.3d 405 (6th Cir. 1993) ..............................................................................2

*Int'l Bhd. of Elec. Workers v. Nat'l Labor Relations Bd.,*
    788 F.2d 1412 (9th Cir. 1986) ..........................................................................6

*NCUA Bd. v. Zovko,*
    728 Fed. Appx. 567 (6th Cir. 2018) ...................................................................10

*Taunt v. Lyons (In re Lyons),*
    1999 U.S. Dist. LEXIS 20240 (E.D. Mich. 1999) ...................................................10

*Trs. of the Painters, Union Deposit Fund v. G&T Commer. Coatings, Inc.,*
    2014 U.S. Dist. LEXIS 129945 (E.D. Mich. 2014) ..................................................6

### State Cases

*Nilavar v. Osborn,*
    127 Ohio App. 3d 1 (2d Dist. 1998) ...................................................................4

## COURT RULES

Fed. R. App. P. 28(a)(8)(A) ...............................................................................10

Rule 8015(a)(7)(B)(ii) of the Federal Rules of Bankruptcy Procedure ............................12

## INTRODUCTION

Appellees Kenneth K. Kayser ("Kayser"), Ronald E. Earley ("Earley"), and Jonathan Hager ("Hager") (collectively, the "Remaining Petitioning Creditors") filed their brief on March 12, 2020 in support of the Bankruptcy Court's ruling. The Remaining Petitioning Creditors' brief misses the main legal issue on appeal, i.e., whether the term "full mutual releases (no carve outs)" includes a release of individuals/entities related to the parties, such as parent companies, subsidiaries, affiliates, officers, directors, heirs, and personal representatives. Instead, the Remaining Petitioning Creditors focus on whether Compass Marketing, Inc. ("Compass Marketing"), is an affiliate of Appellant Tagnetics, Inc. ("Tagnetics"), and subject to the release. To the extent that the Remaining Petitioning Creditors included arguments related to the issue at hand, they fail to rebut Tagnetics' arguments and they fail to support the portions of the Bankruptcy Court's decision that are in error. Furthermore, the Remaining Petitioning Creditors repeatedly (a) mischaracterize the record and/or evidence submitted during the pendency of this matter, and/or (b) fail to cite to the record or evidence in support of the conclusions they make. Each of the Remaining Petitioning Creditors' arguments is unavailing and should be rejected by this Court.

## REPLY ARGUMENT

A. **THE REMAINING PETITIONING CREDITORS MISCHARACTERIZE THE MAIN ISSUE ON APPEAL, WHICH IS WHETHER THE TERM "FULL MUTUAL RELEASES (NO CARVE OUTS)" INCLUDES A RELEASE OF PARENT COMPANIES, SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, AND OTHER RELATED PARTIES**

At the outset, the Remaining Petitioning Creditors included a section titled, "Statement Regarding Proposed Supplemental Settlement," which purports to outline a series of events and/or communications between the Remaining Petitioning Creditors and Tagnetics following the October 18, 2019 hearing, including purported settlement discussions following the October 18,

2019 hearing. *See* Appellees' Brief, pg. v. This section is not relevant to the issues on appeal and is not responsive to the issues raised by Tagnetics in its opening Brief of Appellant ("Brief"). Furthermore, even if the events after the October 18, 2019 hearing occurred as described by the Remaining Petitioning Credits,[1] they may not be considered by this Court because they are not part of the record and could not have been considered by the Bankruptcy Court when it issued its decision. *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993) (holding the court may not consider evidence proffered on appeal when the information was not first submitted to the district court and made part of the record). Thus, the entirety of the section titled "Statement Regarding Proposed Supplemental Settlement" beginning on page v. of the Remaining Petitioning Creditors' brief should be stricken or, at the very least, not considered by this Court.

The Remaining Petitioning Creditors focus a substantial portion of their argument on whether the scope of the release in the parties' settlement agreement specifically included reference to Compass Marketing. The Remaining Petitioning Creditors in this regard argue that they "were questioning the inclusion and more specifically the callout of Compass Marketing." *See* Appellees' Brief, pg. 6. The issue on appeal regarding the scope of the disputed release language, however, is whether the Remaining Petitioning Creditors agreed to release not only Tagnetics, but also its parent companies, subsidiaries, affiliates, officers, directors, and other parties related to Tagnetics (and, correspondingly, whether Tagnetics released parties related to the Remaining Petitioning Creditors, such as their heirs, representatives, and assigns).

Tagnetics cited numerous cases that have reached the same conclusion that Tagnetics advances here (*see* Brief, pgs. 12-13), which is that a full release necessarily applies to related

---

[1] Tagnetics is not even sure it understands each assertion made by the Remaining Petitioning Creditors regarding the alleged post-hearing events.

2

parties, such as parent companies, subsidiaries, and affiliates, among others. The Remaining Petitioning Creditors offer no rebuttal to this case authority. In addition to the abundance of case authority Tagnetics cited, Tagnetics proffered evidence that it is "common practice" to include in any full release of a business entity a release of the entity's parent companies, subsidiaries, affiliates, and other related individuals, such as officers and directors. *See* Brief, pgs. 12-13. Whether Compass Marketing is or is not an affiliate of Tagnetics does not resolve the ultimate issue before the Court, which is whether the release language included affiliates of Tagnetics in the first place. If the Remaining Petitioning Creditors want to take up the issue of whether Compass Marketing is an affiliate of Tagnetics (and, thus, subject to a release that includes parent companies subsidiaries, affiliates, and other related parties – the release that this Court should find was agreed to and part of the settlement agreement), they are free to do so another time, but that is not an issue on appeal or before this Court.

The Remaining Petitioning Creditors' bizarre assertion that the phrase "full mutual releases (no carve outs)" was used "to demonstrate Tagnetics['] agreement to grant a release to the petitioning creditors (Appellees) with no exceptions" defies logic. First, and as Tagnetics' counsel testified at the October 18, 2019 hearing (and which testimony was unrebutted), the Remaining Petitioning Creditors were the ones who sought a full release from Tagnetics. *See* Exhibit 5[2] at 30:23-31:16; *see also* Brief, pgs. 16-17. After discussing the Remaining Petitioning Creditors' demand with Tagnetics that each party be completely released, Tagnetics agreed, so long as the releases were mutual. *Id.* Further, the Remaining Petitioning Creditors' argument ignores the word "mutual" in the phrase "full mutual releases (no carve outs)" by claiming that the agreed

---

[2] For consistency and to reduce the amount of papers filed with the Court, the Exhibits identified in this Reply are numbered the same as in the Brief.

3

upon release language in the July 26, 2019 email was, in a sense, a one-way release from Tagnetics to the Remaining Petitioning Creditors. As the factual progression indicates, Tagnetics was initially hesitant to grant a release to the Remaining Petitioning Creditors, but ultimately included the release, so long as Tagnetics received the same "mutual" release in return from the Remaining Petitioning Creditors. Indeed, the mutuality of the release supports Tagnetics' position. In this regard, it is incongruent and simply unreasonable on its face for the Remaining Petitioning Creditors to think (and argue) the phrase "full mutual releases (no carve outs)" means Tagnetics would release the Remaining Petitioning Creditors and each of their related parties, as reflected in the draft agreement and which the Remaining Petitioning Creditors readily found acceptable,[3] but at the same time "full mutual releases (no carve outs)" would apply only to Tagnetics and not its parent companies, subsidiaries, affiliates, officers, directors, and other related parties.[4] Moreover, by continuing to argue (without citation to any supporting evidence) that each Remaining Petitioning Creditor secretly and subjectively believed the release language to be less than "full and mutual," the Remaining Petitioning Creditors offer "evidence" that may not be considered by the Court. *See Nilavar v. Osborn*, 127 Ohio App. 3d 1, 12 (2d Dist. 1998) ("Secretly held, unexpressed intent is not relevant to whether a contract is formed.").

Ironically, while the Remaining Petitioning Creditors recognize that the Bankruptcy Court applied an objective (rather than subjective) analysis as to what the parties meant when entering

---

[3] *See* Exhibit 2 at Section 7.

[4] The Remaining Petitioning Creditors were advised on numerous occasions to seek legal counsel when negotiating the terms of the settlement agreement. *See* Brief, pg. 14, n.8. Further, the Remaining Petitioning Creditors state in their brief that two attorneys allegedly reviewed the release language and found the language "concerning." While the Remaining Petitioning Creditors cite no evidence and/or any document in the record to support this new contention, the Remaining Petitioning Creditors' alleged concerns regarding the scope of the phrase "full mutual releases (no carve outs)" was not raised until August 16, 2019, which was twenty-eight (28) days following the agreement that was reached on July 26, 2019 (which was reflected in multiple emails that day) and following numerous instances where Tagnetics' counsel urged the Remaining Petitioning Creditors to seek their own counsel to review the settlement agreement.

4

into the settlement agreement, the Remaining Petitioning Creditors continue to present their subjective interpretation of the meaning of the phrase "full mutual releases (no carve outs)," while ignoring the ample objective evidence presented by Tagnetics. For example, the Remaining Petitioning Creditors conceded that the scope of the release the parties agreed to applied to related parties, such as affiliates. *See* Brief, pg. 14 (quoting Exhibit 3 to the Brief, which states in relevant part that "[i]f Compass [Marketing] is not an operating affiliate [sic] then they are not a party to this settlement"). This acknowledgement by the Remaining Petitioning Credits shows their subjective and objective understanding was the same as Tagnetics' – which is that the phrase "full mutual releases (no carve outs)" obviously included related parties, including specifically affiliates of Tagnetics.[5]

In addition to this notable and significant acknowledgement, additional objective evidence can be found in the prior agreement Tagnetics entered into with one of the Remaining Petitioning Creditors. To this end, the same exact release language found in the draft Settlement Agreement also was included in the Settlement Agreement Kayser signed on behalf of Kayser Ventures, Ltd., earlier in this same litigation. *See* Brief, pg. 14 (comparing the release language in the Kayser Ventures, Ltd. Settlement Agreement (Ex. 6 at Section 5) with the release language in the Settlement Agreement (Ex. 2 at Sections 4-6)). As argued in the Brief, the Settlement Agreement with Kayser constitutes at the very least objective evidence that Kayser was aware of or otherwise had knowledge that Tagnetics expected the release in this matter would apply not only to Tagnetics, but also its parent companies, subsidiaries, corporate and operating affiliates, and other related individuals/entities. *See* Brief, pg. 15. The Bankruptcy Court, however, determined that

---

[5] At worst, the quoted language from Exhibit 3 shows that the Remaining Petitioning Creditors had questions as to whether Compass Marketing was an affiliate of Tagnetics, not whether affiliates were included in the release, but, as noted above, the issue of whether Compass Marketing is an affiliate of Tagnetics is not before this Court on appeal.

5

this prior agreement in the same litigation was of no probative value.[6] The Bankruptcy Court's decision in this regard was in error, however. *See Trs. of the Painters, Union Deposit Fund v. G&T Commer. Coatings, Inc.*, 2014 U.S. Dist. LEXIS 129945, **25-26 (E.D. Mich. 2014) (explaining that when determining the intent of the language of the contract, a court may look to "other indicia of intent, such as 'the bargaining history, the context in which the contract was negotiated, the interpretation of the contract by the parties, and the conduct of the parties bearing upon its meaning'") (quoting *Int'l Bhd. of Elec. Workers v. Nat'l Labor Relations Bd.*, 788 F.2d 1412, 1414 (9th Cir. 1986)). With this backdrop, it is clear that despite being provided objective evidence to support the context in which the contract was negotiated, the Bankruptcy Court failed to give the evidence any weight in rendering the opinion.

For these reasons and those reflected in the Brief, the Remaining Petitioning Creditors' arguments that the phrase "full mutual releases (no carve outs)" are without merit and the Court should hold that the phrase "full mutual releases (no carve outs)" included a release of the related parties, such as parent companies, subsidiaries, affiliates, officers, directors, heirs, personal representatives, and other related parties.

**B. THE REMAINING PETITIONING CREDITORS DO NOT OFFER ANY EVIDNECE OR VIABLE ARGUMENT THAT THERE WAS A MEEETING OF THE MINDS IN THE EVENT THE COURT DETERMINES THE PHRASE "FULL MUTUAL RELEASES (NO CARVE OUTS)" DOES NOT INCLUDE RELATED PARTIES**

Although the Remaining Petitioning Creditors take the position that, in the event the Court rules the phrase "full mutual releases (no carve outs)" does not include a release of related parties

---

[6] *See* Exhibit 5 at 46:6-16 ("And let me say this much, I will probably – if they move admission of Exhibit H [Kayser Ventures, Ltd. Settlement Agreement], I will probably admit it, but I'm, again, being forthright and honest, from what I've seen of everything, I tend to agree, Exhibit H, I think, is irrelevant. I'm being forthright and honest with you. You know, I think really for the most party, Exhibit H is irrelevant, because what you – what terms you entered into with other parties on another settlement, even though a same case, I'm struggling to understand the relevance to settlement with these three other parties.").

(such as parent companies, subsidiaries, and affiliates, among others), there was a meeting of the minds between the parties and the settlement agreement should be enforced as is, they fail to cite any evidence and fail to make any legal arguments in support of this position. Indeed, they include a "Section II" on page 9 of their brief contending there was a meeting of the minds, but this one paragraph section actually focuses on the Remaining Petitioning Creditors' arguments about the terms of the agreement, with only a single concluding sentence that contends there was a meeting of the minds. *See* Appellees' Brief, pg. 9. Simply put, there is nothing in the Remaining Petitioning Creditors' brief that rebuts the arguments proffered by Tagnetics that there was no meeting of the minds and, thus, no settlement to enforce in the even the Court finds the phrase "full mutual releases (no carve outs)" does not include a release of related parties.

### C.  APPELLEES MISCHARACTERIZE THE RECORD

The Remaining Petitioning Creditors consistently mischaracterize the record and/or evidence introduced throughout this litigation. A number of examples are included below.

The Remaining Petitioning Creditors assert that Tagnetics argued at the October 18, 2019 hearing that the July 26, 2019 email contained all the settlement terms and that "no other terms, whether or not discussed prior to the July 26, 2019 email, could be included in the agreement settlement." *See* Appellees' Brief, pg. 3. The Remaining Petitioning Creditors, however, did not cite any portion of the record where Tagnetics' counsel allegedly made this statement (or a similar statement). The reason for the lack of citation is that Tagnetics' counsel never made this statement and there was never anything communicated to even allow such an inference. In fact, counsel for Tagnetics testified that the July 26, 2019 email contained the "key terms" of the Settlement Agreement (*see* Ex. 5 at 14:2-10; 32:14-17) and that the agreement will be more thoroughly

7

documented in a written settlement agreement to be prepared in the coming days (*see* Ex. 5 at 33:5-19).

Similarly, the Remaining Petitioning Creditors state (again, without citation to the transcript) that "Mr. Stern and Mr. Kracht argued that any terms sought by the petitioning creditors (Appellees) that were not listed explicitly in the email agreement were beyond the scope of the agreement." *See* Appellees' Brief, pg. 5. At the October 18, 2019 hearing, counsel for Tagnetics testified that, after sending the draft Settlement Agreement, the parties exchanged emails and "[m]any of the terms included below [by the Remaining Petitioning Creditors] clearly fall outside the scope of what we agreed to, the email exchange on July 26, 2019, at 3:56 p.m. and again at 3:59 p.m." *See* Ex. 5 at 48:18-21. The Remaining Petitioning Creditors mischaracterize the context of this statement by Tagnetics' counsel and the previous settlement discussion history between the Parties. As previously stated, and it cannot be disputed, the July 26, 2019 email established the "key terms" of the Settlement Agreement. Following the parties' agreement via email on the "key terms," counsel for Tagnetics drafted a settlement agreement, which remained entirely consistent with the "key terms" from the July 26, 2019 email. The Remaining Petitioning Creditors, however, sought to modify the Settlement Agreement in a way that was inconsistent with the "key terms" from the July 26, 2019 email. Notably, for example, the Remaining Petitioning Creditors attempted to add "payments that were not included in the July 26 email exchange, setting forth the settlement payments. In addition, those requests for additional payments clearly seek an exception to the full mutual releases, no carve outs." *See* Ex. 5 at 48:25 – 49:4. Also by way of example, the Remaining Petitioning Creditors attempted to add other provisions that were not part of the "key terms" from the July 26, 2019 email, including a request for a default judgment. *Id.* at 49:11-13. In proper context, Tagnetics' counsel's statement makes

8

sense – the draft settlement agreement contained additional and often "boilerplate" terms that otherwise were not captured in the July 26, 2019 email establishing the "key terms." Further, and more importantly, the draft settlement agreement remained entirely consistent with and did not alter in any way the "key terms" from the July 26, 2019 email. On the other hand, the Remaining Petitioning Creditors did indeed attempt to alter the agreed upon "key terms" from the July 26, 2019 email by proposing, among other things, many exceptions to the release (and they are seeking to do the same here by trying to limit the scope of the release). It is evident that the Remaining Petitioning Creditors have attempted to use Tagnetics' counsel's testimony to mislead the Court regarding the scope of the terms of the agreement between the parties.

### D. APPELLEES CONSISTENTLY FAIL TO CITE AND/OR ACCURATELY REFLECT THE RECORD

While the Remaining Petitioning Creditors mischaracterize the record and the context in which statements were made, the Remaining Petitioning Creditors also consistently fail to cite to the record and/or cite evidence in support of the numerous assertions they make. For example, the Remaining Petitioning Creditors make the following assertions and/or conclusions without citation and/or reference to any document in the record or properly admitted evidence at the October 18, 2019 hearing:

- On page 6 of their brief, the Remaining Petitioning Creditors state that "[d]uring the time Kayser and Earley were Directors, they were not aware of Compass Marketing having significant stock ownership just significant number of un-exercised stock options. Some of the release language was also concerning and was reviewed by an attorney in Roanoke, Virginia and an attorney in Dayton, OH who both shared concern with how the release language was presented."

- On page 8 of their brief, the Remaining Petitioning Creditors state that "Kenneth Kayser was not comfortable with the release language in the Kayser Ventures Settlement but since that settlement was full and complete in a single payment there was no need to question the elements of the release."

- On page 8 of their brief, the Remaining Petitioning Creditors state that "[t]he court stated they were very skeptical about the position to infer that affiliates were included."

Without proper citation to the record and/or properly admitted evidence, Tagnetics cannot reasonably determine (a) whether the Remaining Petitioning Creditors have accurately quoted any particular document or testimony, (b) whether the Remaining Petitioning Creditors have properly included the relevant context in the event any passage has been property quoted, and (c) if the above two conditions have been met, whether the argument being advanced by the Remaining Petitioning Creditors is relevant to the issue(s) on appeal.

Further, it is not the job of this Court to sift through the evidence and the record to perform the above analysis. *See NCUA Bd. v. Zovko*, 728 Fed. Appx. 567, 569 (6th Cir. 2018) (citing Fed. R. App. P. 28 (a)(8)(A) for the proposition that a court is not obligated to search the record for support of an argument); *see also Taunt v. Lyons (In re Lyons)*, 1999 U.S. Dist. LEXIS 20240, *23 (E.D. Mich. 1999) (finding that summary judgment granted by the Bankruptcy Court was appropriate when, *inter alia*, the "facts" cited in a brief lack any support in the evidentiary record); *Baseball at Trotwood, LLC v. Dayton Prof'l Baseball Club*, 2003 U.S. Dist. LEXIS 27460, n.62 (S.D. Ohio 2003) ("Plaintiffs' factual assertions are not supported by the evidence, insofar as they either do not provide citation to the record, or they cite to inadmissible documentation."). Given that the Remaining Petitioning Creditors rely on unsupported and/or uncited assertions, the Court should assume that each assertion and/or argument advanced by the uncited portions of their argument are not found in the record and, thus, give no weight to each.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Tagnetics' opening Brief, the Court should either (1) affirm the decision of the Bankruptcy Court, in part, and reverse the decision of

the Bankruptcy Court with respect to the scope of the release and hold that the term "full mutual releases (no carve outs)" includes releases of not only the parties to this litigation, but related individuals/entities, such as parent companies, subsidiaries, affiliates, officers, directors, and, as appropriate, heirs and personal representatives, or (2) if the term "full mutual releases (no carve outs)" does not include a release of the related parties advocated by Tagnetics, reverse the decision of the Bankruptcy Court and hold there was no meeting of the minds and, thus, there was no settlement agreement to enforce.

### CERTIFICATE OF COMPLIANCE WITH RULE 8015(a)(7) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Appellant Tagnetics, Inc., hereby certifies that the foregoing Brief of Appellant complies with the page limitations prescribed by Rule 8015(a)(7)(B)(ii) of the Federal Rules of Bankruptcy Procedure. Specifically, Appellant Tagnetics, Inc.'s certifies that the foregoing contains 3,530 words and 272 lines of text.

Respectfully submitted,

/s/ Stephen B. Stern
Stephen B. Stern, Admitted *Pro Hac Vice*
KAGAN STERN MARINELLO & BEARD, LLC
238 West Street
Annapolis, Maryland 21401
(410) 216-7900 – Telephone
(410) 705-0836 – Facsimile
stern@kaganstern.com (email)

*Counsel for Appellant/Alleged Debtor Tagnetics, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2020, a copy of the foregoing Reply Brief of Appellant was served (i) **electronically** on the date of filing through the Court's ECF System on all ECF participants registered in this case at the email address registered with the court and (ii) electronically by email on counsel for Tagnetics, Inc., Douglas Draper, Esq. (ddraper@hellerdraper.com) and Leslie Collins, Esq. (lcollins@hellerdraper.com), and (iii) by **ordinary U.S. Mail** on March 26, 2020 addressed to:

Kenneth W Kayser
PO Box 115
Catawba, VA 24070

Ronald E. Early
6429 Winding Tree Drive
New Carlisle, OH 45344

Jonathan Hager
842 Paint Bank Road
Salem, VA 24153

MaryAnne Wilsbacher
Office of the United States Trustee
170 North High Street
Suite 200
Columbus, Ohio 43215

                                              /s/ *Stephen B. Stern*
                                              Stephen B. Stern, Admitted *Pro Hac Vice*